# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| KANESHIA THOMAS, | ) |
| | ) |
| PLAINTIFF, | ) CASE NO.: |
| | ) |
| V. | ) PLAINTIFF DEMANDS TRIAL |
| | ) BY STRUCK JURY |
| 2020 COMPANIES, INC., | ) |
| | ) |
| DEFENDANT. | ) |

## COMPLAINT

COMES NOW, Kaneshia Thomas ("Plaintiff" or "Thomas"), by and through the undersigned counsel, and files this, her Complaint for damages to be answered by the Defendant 2020 Companies, Inc. ("Defendant") pursuant to the Federal Rules of Civil Procedure.

## INTRODUCTION

Ms. Thomas brings this cause of action for damages against her former employer. When Ms. Thomas needed accommodations and leave to be approved by her new white, male, supervisor, he chose to have her terminated for something she did not do which had previously been closed by both her employer and Walmart. He then promoted the white male who did engage in that conduct for which she was

terminated and placed him in her position. She is seeking lost wages, compensatory damages, punitive damages, attorney fees and costs.

## JURISDICTION

1.  This action for injunctive relief and damages is brought under 28 U.S.C. §§ 1331, 1343(4), 2201, and 2202. The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights caused by the Defendant.

2.  This is a suit authorized and instituted under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., (ADAAA), Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C. § 2000e, et seq. (Title VII), 42 U.S.C. § 1981. This is a suit authorized and instituted under "Section 1981", and Pregnant Workers Fairness Act ("PWFA").

3.  Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A).

4.  Plaintiff further sued within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

5.  There are no statutory prerequisites for claims filed under Section 1981, and the claims are filed within four years of the alleged actions. 28 U.S.C. §1658(a); See *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 US 2004); *Baker v.*

*Birmingham Board of Education*, 531 F.3d 1336 (11th Cir. 2008)(where the district court was reversed because it applied the two-year 42 U.S.C. §1983 statute of limitations in a 42 U.S.C. §1981 by and through 42 U.S.C. §1983 as the correct statute of limitations is four years pursuant to 28 U.S.C. §1658).

## PARTIES

6. Thomas is a resident of Dothan, Houston County, Alabama, and performed work for the Defendant in the counties composing the Middle District of Alabama, Southern Division, during the events of this case. Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the Division.

7. Defendant is a foreign company registered and doing business in the State of Texas, but it has sufficient minimum contacts with the State of Alabama that it is subject to service of process in the State of Alabama.

8. Defendant employed at least fifteen (500) people during the current or preceding calendar year.

## FACTS

9. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

10. Thomas is an African American colloquially referred to as "black".

11. Thomas is female.

12. Thomas began her employment with defendant on or about July 20, 2024, as a Market Manager.

13. As part of her duties, Thomas traveled to different Wal-Mart stores and sold T Mobile, Verizon, and AT&T telephones.

14. Thomas had no discipline, write-ups or verbal counseling during her employment for the Defendant.

15. Thomas' supervisor at the time of the discriminatory acts was Rodney Buchanan, a white male.

16. Robet Kesler, a white male, was a Sales Representative.

17. In February of 2025, Robert Kesler was involved in an incident at a Wal-Mart in Texas.

18. A customer came in to trade up his cellphone.

19. When a customer trades up a cell phone, they only have to pay the sales tax.

20. This customer did not have enough money to pay the sales tax to pay for the upgrade.

21. Robert Kesler wanted to help the customer.

22. He offered to pay the sales tax on the phone for the customer.

23. By paying the sales tax on the phone, Robert Kessler would receive commission for the sale.

24. However, Robert Kessler asked another Sales Associate at Wal-Mart to pay for it him and told him he would reimburse it.

25. The Sales Associate paid the sales tax.

26. Thomas was working in another state when Robert Kessler's transaction happened, and she was unaware of the transaction until after the fact.

27. Thomas had nothing to do with the transaction.

28. This transaction was brought to Thomas' attention, so she had a three-way call to address it.

29. The Associate was paid back.

30. No one was disciplined and nothing happened over the incident.

31. Thomas continued to work in the Wal-Mart stores.

32. Even though there was no problem, Thomas reported the transaction to Human Resources (HR) to make sure it was documented.

33. HR reviewed the incident and closed it out without disciplining either Thomas or Robert Kessler.

34. From March 24, 2025, to March 28, 2025, Thomas took approved leave for a procedure related to her pregnancy.

35. The procedure did not go well, and Thomas miscarried her baby.

36. Thomas was expected to return to work on April 1, 2025.

37. On April 1, 2025, Thomas received a new Regional Manager, Rodney Buchanan—a white male.

38. At this same time, Thomas' husband, who is diabetic, experienced a stroke and a seizure and was placed on life support.

39. Thomas is her husband's power of attorney.

40. Thomas requested additional time off with a doctor's note stating she needed to be off from April 1, 2025, to April 20, 2025, so she could be at the hospital in the event she needed to make any decisions regarding her husband's medical care.

41. Thomas was told by her employer they did not need her doctor's note and to run it by her supervisor.

42. Thomas contacted Rodney Buchanan and requested this time off.

43. Mr. Buchanan did not accommodate Thomas with the requested time off and told her he wanted her to work 4 days on and 3 days off.

44. On April 6, 2025, Thomas was contacted and told that she was banned from Wal-Mart back in February of 2025 when the above-stated incident occurred.

45. Thomas was never notified of being banned, and she had been told her report of Robert Kesler's conduct and her subsequent handling of the issue was favorably closed by both Wal-Mart and HR.

46. Robert Kesler, the individual who engaged in the inappropriate transaction, was not banned.

47. Thomas complained of race discrimination as Mr. Kesler is white but not banned.

48. Thomas requested a formal investigation into what was being said against her.

49. On April 15, 2025, Thomas was terminated.

50. The stated reason for Thomas' termination was the incident in February for which her only involvement was to report upon learning of what happened.

51. Robert Kesler, the white male individual who was involved in the February transaction was promoted to Thomas' position.

## COUNT I- TITLE VII- DISCRIMINATORY TREATMENT AND DISCHARGE BASED ON RACE

52. Plaintiff incorporates by reference and realleges paragraphs 9-51 as if set out herein.

53. Thomas established a convincing mosaic of direct and circumstantial evidence that she was discriminated against because of her race.

54. Thomas is a black.

55. Thomas was qualified for the position of Marketing Manager and was performing the position without issue.

56. Defendant banned Thomas from Walmart when it did not ban Robert Kesler, the white male individual who engaged in the conduct that was reported by Thomas to HR.

57. Defendant terminated Plaintiff's employment on or about April 15, 2025.

58. Defendant Robert Kesler was individual who engaged in the conduct but remained employed.

59. Robert Kesler is white.

60. The reason for terminating Plaintiff is false as she reported Mr. Kesler's conduct to HR and Walmart, no one was fired or disciplined when the report was closed, and she continued to work at Walmart.

61. It was when the new, white, manager, Rodney Buchanan, came in and wanted to promote the white male when the decision to terminate plaintiff occurred.

62. Robert Kesler was placed in Plaintiff's position after her termination.

63. Thomas' race was a motivating factor in Defendant's decision to ban her then terminate Plaintiff's employment.

64. Defendant's actions in banning her then terminating Plaintiff's employment violated Title VII.

65. Because of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay and benefits, metal anguish, other compensatory damages.

### COUNT II- TITLE VII – RETALIATION

66. Plaintiff incorporates by reference and realleges paragraphs 9-51 as if set out herein.

67. Thomas established a convincing mosaic of direct and circumstantial evidence that she was retaliated against because of her race.

68. Thomas is a black.

69. Thomas was qualified for the position of Marketing Manager and was performing the position without issue.

70. On or about April 6, 2025, Thomas complained to her supervisor that she felt the decision to ban her from Walmart was based on her race as the white individual involved was not banned.

71. Within two weeks of Thomas' race discrimination complaint, on or about April 15, 2025, Defendant terminated her employment.

72. Robert Kesler, who engaged in the conduct that Thomas reported remained employed and was promoted to Thomas' position.

73. Robert Kesler is white.

74. The reason for terminating Plaintiff is false as she reported Mr. Kesler's conduct to HR and Walmart, no on was banned or disciplined when the report was closed, and she continued to work at Walmart.

75. It was only after Thomas made her complaint of racial discrimination that she was terminated for the alleged offense.

76. Robert Kesler was placed in Plaintiff's position after her termination.

77. Thomas' race discrimination complaint was at least one but-for reason to terminate Plaintiff's employment.

78. Defendant's actions in retaliating against Thomas for her race discrimination complaint violated Title VII.

79. Because of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay and benefits, mental anguish, and other compensatory damages.

### COUNT III- 42 U.S.C. §1981 – DISCRIMINATORY TREATMENT AD DISCHARGE BASED ON RACE

80. Plaintiff incorporates by reference and realleges paragraphs 9-51 as if set out herein.

81. Thomas established a convincing mosaic of direct and circumstantial evidence that she was discriminated against because of her race.

82. Thomas is a black.

83. Thomas was qualified for the position of Marketing Manager and was performing the position without issue.

84. Defendant banned Thomas from Walmart when it did not ban Robert Kesler, the white male individual who engaged in the conduct that was reported by Thomas to HR.

85. Defendant terminated Plaintiff's employment on or about April 15, 2025.

86. Defendant Robert Kesler was individual who engaged in the conduct but remained employed.

87. Robert Kesler is white.

88. The reason for terminating Plaintiff is false as she reported Mr. Kesler's conduct to HR and Walmart, and no one was fired or disciplined when the report was closed.

89. It was when the new, white, manager, Rodney Buchanan, came in and wanted to promote the white male when the decision to terminate plaintiff occurred.

90. Robert Kesler was placed in Plaintiff's position after her termination.

91. Thomas' race was at least one "but-for" reason in Defendant's decision to ban her then to terminate Plaintiff's employment.

92. Defendant's actions in banning her then terminating Plaintiff's employment violated Section 1981.

93. Because of Defendant's violation of Section 1981, Plaintiff has been damaged, suffering loss of pay and benefits, metal anguish, and other compensatory damages.

**COUNT IV- 42 U.S.C. §1981 – RETALIATION**

94. Plaintiff incorporates by reference and realleges paragraphs 9-51 as if set out herein.

95. Thomas established a convincing mosaic of direct and circumstantial evidence that she was retaliated against because of her race.

96. Thomas is a black.

97. Thomas was qualified for the position of Marketing Manager and was performing the position without issue.

98. On or about April 6, 2025, Thomas complained to her supervisor that she felt the decision to ban her from Walmart was based on her race.

99. Within two weeks of Thomas' race discrimination complaint, on or about April 15, 2025, Defendant terminated her employment.

100. Robert Kesler, who engaged in the conduct that Thomas reported remained employed and was promoted to Thomas' position.

101. Robert Kesler is white.

102. The reason for terminating Plaintiff is false as she reported Mr. Kesler's conduct to HR and Walmart, no one was banned or disciplined when her report was closed, and she continued to work at Walmart.

103. It was only after Thomas made her complaint of racial discrimination that she was terminated for the alleged offense.

104. Robert Kesler was placed in Plaintiff's position after her termination.

105. Thomas' race discrimination complaint was at least one but-for reason to terminate Plaintiff's employment.

106. Defendant's actions in retaliating against Thomas for her race discrimination complaint violated Title VII.

107. Because of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay and benefits, mental anguish, and other compensatory damages.

## COUNT V- TITLE V- DISCRIMINATORY TREATMENT AND DISCHARGE BASED ON SEX/GENDER

108. Plaintiff incorporates by reference and realleges paragraphs 9-51 as if set out herein.

109. Thomas established a convincing mosaic of direct and circumstantial evidence that she was discriminated against because of her gender/sex.

110. Thomas is a female.

111. Thomas was qualified for the position of Marketing Manager and was performing the position without issue.

112. Defendant banned Thomas from Walmart when it did not ban Robert Kesler, the white male individual who engaged in the conduct that was reported by Thomas to HR.

113. Defendant terminated Plaintiff's employment on or about April 15, 2025.

114. Defendant Robert Kesler was individual who engaged in the conduct but remained employed.

115. Robert Kesler is male.

116. The reason for terminating Plaintiff is false as she reported Mr. Kesler's conduct to HR and Walmart, no one was fired or disciplined when the report was closed, and she continued to work at Walmart.

117. It was when the new, male, manager, Rodney Buchanan, came in and wanted to promote the male is when the decision to terminate plaintiff occurred.

118. Robert Kesler was placed in Plaintiff's position after her termination.

119. Thomas' gender was a motivating factor in Defendant's decision to ban her and then terminate Plaintiff's employment.

120. Defendant's actions in banning then terminating Plaintiff's employment violated Title VII.

121. Because of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay and benefits, metal anguish and other compensatory damages.

## COUNT V- PREGNANT WORKERS FAIRNESS ACT (PWFA)- RETALIATION

122. Plaintiff incorporates by reference and realleges paragraphs 9-51 as if set out herein.

123. Thomas established a convincing mosaic of direct and circumstantial evidence that she was discriminated against because of her request for leave for her condition relating to her pregnancy.

124. Thomas was pregnant and took leave from March 24, 2025, to March 28, 2025 for a procedure related to her pregnancy.

125. The procedure did not go well, and she miscarried the baby.

126. Within one month of taking leave for her pregnancy, on April 15, 2025, Thomas was terminated.

127. Thomas' protected activity of taking leave for a pregnancy related condition was a motivating factor in Defendant's decision to ban her and then terminate Plaintiff's employment.

128. Defendant's actions in banning her then terminating Plaintiff's employment violated the PWFA.

129. Because of Defendant's violation of the PWFA, Plaintiff has been damaged, suffering loss of pay and benefits, mental anguish and other compensatory damages.

**COUNT VI- ADA- ASSOCIATION – FAILURE TO ACCOMMODATE**

130. Plaintiff incorporates by reference and realleges paragraphs 9-51 as if set out herein.

131. Plaintiff has established a convincing mosaic of direct and circumstantial evidence she was terminated based on her association with an individual with a disability.

132. Plaintiff was qualified for her position as she was already performing the job successfully without issue.

133. The Defendant was aware of Plaintiff's association with a disabled individual as she told her employer her husband had diabetes, had a stroke, was hospitalized, and was life support when she explained she needed to be off from April 1, 2025, to April 20, 2025.

134. Plaintiff's husband's diabetes affected his everyday activities in that he was on life support and unable to do any normal everyday activities.

135. Plaintiff provided her employer and her direct supervisor information needed to take leave to care for her husband.

136. Plaintiff was told to work 4 days on and 3 days off instead of being accommodated.

137. Other than telling Plaintiff what her schedule would be which did not accommodate her, the Defendant engaged in no interactive process.

138. At all times relevant to this complaint, Plaintiff performed the essential functions of her job duties as in a satisfactory or better manner.

139. On April 15, 2025, and before her request for leave dates lapsed, Defendant terminated Plaintiff's employment, citing a prior incident involving a different employee that had previously resulted in no discipline and had been closed.

140. Plaintiff was terminated because of her association with disabled individuals.

141. Based on the foregoing actions taken, the adverse actions taken against Plaintiff were under circumstances which raise a reasonable inference the disability of the associated person was a determining factor in the defendant's decision.

142. As a result of Defendant's violation of the ADAAA, Plaintiff has been damaged, suffering loss of pay, benefits, mental anguish and other compensatory damages.

### COUNT VII– ADAAA – ASSOCIATION RETALIATION

143. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

144. Plaintiff has established a convincing mosaic of direct and circumstantial evidence she was retaliated against based on her association with a individual with a disability.

145. Plaintiff was qualified for her position as she was already performing the job successfully without issue.

146. The Defendant was aware of Plaintiff's association with disabled individuals as she told them about her family member with a disabling condition and requested leave to care for said individual.

147. Plaintiff engaged in a protected activity when she requested leave to care for her husband and to take care of his needs.

148. On April 15, 2025, prior to the date the leave request lasped, Defendant terminated Plaintiff's employment, citing an incident that had previously resulted in no discipline and had been closed.

149. Based on the foregoing actions taken, the adverse actions taken against Plaintiff were under circumstances which raise a reasonable inference the request to take leave for the disability of the associated person was a determining factor in the defendant's decision.

150. Because of Defendant's violation of the Rehabilitation Act, Plaintiff has been damaged suffering loss of pay, benefits, mental anguish, and other compensatory damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for the following relief:

A.  Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the Americans with Disabilities Act; Title VII of the Civil Rights Act of 1964; Section 1981; and the PWFA.

B.  Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position she would have had, had she not been terminated;

C.  Award back pay (with prejudgment interest), with employment benefits, front pay, liquidated damages; compensatory damages, special damages; punitive damages nominal damages;

D.  Attorneys' fees and costs;

E.  Plaintiff requests that the Court award Plaintiff equitable relief as provided by law; and,

F.  Any different or additional relief as determined by the Court to which Plaintiff is entitled.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

                                                */s/ Patricia A. Gill*
                                                Patricia A. Gill

**OF COUNSEL:**

The Workers' Firm
2 20th Street North, Suite 900
Birmingham, Alabama 35203
T: 205.329-6392
F: trish@theworkersfirm.com

PLEASE SERVE DEFENDANT AS FOLLOWS

20/20 Companies, Inc.